# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>The Cellular Telephone Assigned Call Number<br>(470) 778-8075 | )<br>)<br>) Case No. **1:24-MJ-00024**<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☐ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1001 | false statements |
| 18 U.S.C. § 1542 | passport fraud |
| 18 U.S.C. § 1028A | aggravated identity theft |

The application is based on these facts:
See affidavit in support of search warrant. To ensure technical compliance with 18 U.S.C. §§ 3121-3127, the warrant will also function as a pen register order. I thus certify that the information likely to be obtained is relevant to an ongoing criminal investigation conducted by the U.S. Dept. of State. See 18 U.S.C. §§ 3122(b), 3123(b).

☑ Continued on the attached sheet.

☑ Delayed notice of  30  days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Michael T Aposporos*
Digitally signed by Michael T Aposporos
Date: 2024.01.12 09:32:33 -06'00'

*Applicant's signature*

Special Agent Michael Aposporos
*Printed name and title*

Sworn and subscribed to before me by reliable electronic means, specifically, FaceTime video conference in accordance with Fed. R. Crim. P. 4.1.

Date: **Jan 12, 2024**

*Stephanie K. Bowman*
*Judge's signature*

City and state: Cincinnati, Ohio

Hon. Stephanie K. Bowman, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number (470) 778-8075, with an unknown listed subscriber (the "Target Cell Phone"), whose wireless service provider is T-Mobile, a company headquartered at 12920 SE 38th Street Bellevue, Washington 98006.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of T-Mobile including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to Be Seized by the Government

All information described above in Section I that will assist in arresting YAW MINTAH AFARI, who was charged with violating 18 U.S.C. § 1001 (False Statements), 18 U.S.C. § 1542 (Passport Fraud), and 18 U.S.C. § 1028A (Aggravated Identity Theft) on or about January 11, 2024, is the subject of an arrest warrant issued on or about January 11, 2024, and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (470) 778-8075 | Case No. **1:24-MJ-00024**<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Michael Aposporos, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (470) 778-8075, with an unknown subscriber (the "Target Cell Phone"), whose service provider is T-Mobile, a wireless telephone service provider headquartered at 12920 SE 38th Street Bellevue, Washington 98006. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent with the U.S. Department of State Diplomatic Security Service (DSS) beginning November 1, 2022. I am a graduate of the Federal Law Enforcement

Training Center's Criminal Investigator Training Program and the U.S. State Department Basic Special Agent Course. I have received and continue to receive, on an ongoing basis, training in the laws, rules, and regulations concerning the issuance and use of U.S. Passports and Visas. I have participated in several investigations, to include those involving passport and visa fraud, counterfeit documents, and identity theft in the course of my duties.

4. Prior to becoming a Special Agent, I worked as a Fraud Prevention Manager and Passport Adjudicator with the U.S. Department of State for four years. As a Fraud Prevention Manager my duties included training passport adjudicators to detect fraud indicators on passport applications and manage the fraud detection program at the Washington Passport Agency and Special Issuance Agency. As a Passport Adjudicator, I evaluated identity and citizenship documents to determine the issuance of U.S. passports.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that YAW MINTAH AFARI has violated 18 U.S.C. § 1001 (False Statements), 18 U.S.C. § 1542 (Passport Fraud), and 18 U.S.C. § 1028A (Aggravated Identity Theft). AFARI was charged with these crimes on or about January 11, 2024 and is the subject of an arrest warrant issued on or about January 11, 2024. There is probable cause to believe that AFARI is an unlicensed and unregistered long-haul truck driver with an unknown schedule making it difficult to locate him. There is also probable cause to believe AFARI is aware of law enforcement interest in his crimes. He has used his work schedule to avoid multiple attempts to meet in person. There is

also probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting AFARI, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

7. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8. The United States, including Diplomatic Security Service, is conducting a criminal investigation of AFARI regarding possible violations of 18 U.S.C. § 1001 (False Statements), 18 U.S.C. § 1542 (Passport Fraud), and 18 U.S.C. § 1028A (Aggravated Identity Theft).

9. Briefly stated, there is probable cause to believe that YAW MINTAH AFARI used another person's identity over a period of many years.

10. AFARI was born in Ghana in 1977. He entered the United States in March 1999 on a visitor's visa. He overstayed his three-month visa.

11. In July 1999, AFARI obtained a driver's license in Virginia with his photo:



3

12. In July 2001, AFARI was charged with assault in Fairfax, Virginia.

13. At some point thereafter, AFARI stole the identity of his acquaintance, whose initials are A.D. Virginia driver's license records show that the two men lived on the same street. In addition, when A.D. was interviewed recently, he told investigators that he had met AFARI through a mutual acquaintance.

14. On May 25, 2007, AFARI was arrested in Dekalb County, Georgia on fraud charges (case 09CR4113), but he identified himself using A.D.'s name and birth date. He was fingerprinted and photographed:



15. It appears that AFARI's use of A.D.'s identity first came to light on or about March 3, 2009. According to a police report from Dekalb County, Georgia, officers learned that AFARI had used A.D.'s identity in connection with various arrests.

16. On June 30, 2009, AFARI was sentenced in Gwinnett County, Georgia case 09-B-1908-6. He pled guilty to theft. According to a transcript of the hearing, AFARI was placed under oath and admitted that he used the names A.D. and YAW AFARI, though he falsely stated that "Andrew" was his real name. The court imposed a five-year sentence, with six months in custody and the balance to be served on probation.

17. On December 15, 2009, AFARI was sentenced in Dekalb County, Georgia cases 09CR4113 and 09CR5103. He was sentenced to six years in prison for fraud and forgery in case 09CR4113. He was sentenced to 15 years on probation for theft, forgery, and fraud in case 09CR5103. Although he was charged under A.D.'s name in both cases, the judgments in each case indicate that his correct name is "YAWMINTA AFARI."

18. The Georgia Department of Corrections maintained this photograph of AFARI (a/k/a A.D.) from his incarceration.



19. Records from the Social Security Administration demonstrate that AFARI applied for two replacement Social Security cards under A.D.'s identity while he was in prison in Georgia. The first application was dated September 29, 2010 and the second was dated December 14, 2011. On both applications, the applicant's address is listed as a PO Box for a state prison in Georgia. On both applications, the applicant's proof of identity is listed as Georgia state prisoner ID number 1000034771. According to records from the Georgia Department of Corrections, this number is associated with AFARI (a/k/a A.D.).

20. According to records from the Georgia Department of Corrections, AFARI was paroled on or about February 1, 2012.

21. AFARI (posing as A.D.) apparently moved to the Cincinnati area at some point in 2018 or 2019. Ohio Law Enforcement Gateway (OHLEG) records reflect some driving infractions under A.D.'s identity in 2019. Hamilton County Probate Court records reflect a marriage certificate for A.D. and a woman with the initials D.M. on August 17, 2019.

22. On January 22, 2021, AFARI (posing as A.D.) obtained a replacement Social Security card from the Cincinnati (North) Social Security office. He identified himself as A.D. As proof of identity, he submitted the August 17, 2019 marriage certificate.

23. On February 19, 2022, AFARI submitted a passport application in Hamilton County, Ohio in the name of A.D., with A.D.'s date of birth and Social Security number. AFARI, posing as A.D., claimed that his prior passport was lost in or about April 2020.[1] AFARI listed telephone number (470) 778-8075 (the Target Cell Phone) on the passport application. In support of the application, AFARI submitted an affidavit from D.M., the woman he married when he was posing as A.D. In the affidavit, D.M. said she was the applicant's wife and he was a U.S. citizen or national. The passport application contained this photograph of AFARI posing as A.D:

---

[1] In reality, there was no valid passport for A.D. in April 2020. The real A.D. obtained a passport in 2007, which expired in 2017. He obtained a new passport in November 2021. The real A.D. showed both of these passports to investigators when they interviewed him.



24. The passport application was flagged because the real A.D. had recently obtained a passport. The State Department launched an investigation. On July 30, 2022, agents interviewed the real A.D. in Virginia. As proof of his identity, A.D. presented a variety of documents, including a certified copy of his birth certificate, a passport issued in 1994, another passport issued in 2000, a passport issued in 2007, a passport issued in 2021, his 2020 federal tax return, and a police report he filed in 2013 complaining that he was a victim of identity theft, among other documents. A.D. also allowed the agents to take his fingerprints.

25. A.D. explained that he has been seriously impacted by having his identity stolen. For example, he stated that he was arrested in 2009 for a warrant from Stone Mountain, Georgia for a crime that AFARI committed under A.D.'s identity. He had to travel to Georgia to clear that up. He later had to travel to Georgia a second time and take a DNA test to prove that he was not liable for child support payments for a child that AFARI fathered under A.D.'s name. A.D. also explained that he lost his job as an Uber driver because of the criminal record that AFARI compiled under A.D.'s identity.

26. A.D. explained that he knew AFARI when they were younger and they both lived in the same town in Virginia. A.D. explained that he has continuously lived in Virginia since he arrived in the United States. This is corroborated by various government records. For example,

7

in 2007, A.D. was naturalized in Virginia and he obtained a Social Security card in Virginia; meanwhile in 2007, AFARI (posing as A.D.) was arrested in Georgia.  As another example, A.D. obtained another replacement Social Security card in February 2018 in Virginia; that same month, AFARI (posing as A.D.) was sentenced in a criminal case in Georgia.  As a third example, A.D. was photographed for his driver's license in Virginia in December 2021 and he was interviewed by investigators in Virginia in July 2022; in that same time frame, AFARI (posing as A.D.) applied for a passport in Cincinnati in February 2022.  In short, the evidence corroborates A.D.'s claim that he has lived in Virginia continuously while AFARI has used A.D.'s identity in Georgia and Ohio.

27. On October 13, 2023 a U.S. Department of Homeland Security forensic laboratory compared the May 25, 2007 fingerprints from AFARI's arrest under A.D.'s identity in Georgia with two sets of prints under AFARI's true identity, and determined that these three prints were all made by the same person.  The fingerprint examiner also reviewed the fingerprints taken from A.D. when he was interviewed on July 30, 2022 and determined that these were made by a different person than the other three aforementioned sets of prints.

28. Starting in March 2023 SA Aposporos attempted multiple times to schedule a meeting with AFARI to discuss the passport application he submitted in A.D.'s identity.  When reached via the Target Cell Phone, phone number (470) 778-8075 (from the passport application AFARI submitted), AFARI identified himself as A.D. and stated that he was unable to schedule a meeting because he was a long-haul truck driver and did not know his schedule.  On five additional calls, AFARI provided similar reasons for avoiding meeting to discuss his passport application.  SA Aposporos last spoke to AFARI at that number on October 17, 2023 when he

provided the same work schedule excuse.  No individual aside from AFARI identifying himself as A.D. ever answered the phone when called by SA Aposporos.

29. Using commercial databases SA Aposporos identified T-Mobile as the cellular phone provider for the Target Cell Phone.

30. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

31. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available.

32. Based on my training and experience, I know that T-Mobile can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

33. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

34. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as

defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

35. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

36. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

37. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Michael T Aposporos
Digitally signed by Michael T Aposporos
Date: 2024.01.12 09:33:15 -06'00'

Michael T. Aposporos
Special Agent
Diplomatic Security Service

Subscribed and sworn to before me by reliable electronic means, specifically, FaceTime video conference on January  12 , 2024.

*Stephanie K. Bowman*
_____
HON. STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number (470) 778-8075, with an unknown listed subscriber (the "Target Cell Phone"), whose wireless service provider is T-Mobile, a company headquartered at 12920 SE 38th Street Bellevue, Washington 98006.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of T-Mobile including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

II. **Information to Be Seized by the Government**

All information described above in Section I that will assist in arresting YAW MINTAH AFARI, who was charged with violating 18 U.S.C. § 1001 (False Statements), 18 U.S.C. § 1542 (Passport Fraud), and 18 U.S.C. § 1028A (Aggravated Identity Theft) on or about January 11, 2024, is the subject of an arrest warrant issued on or about January 11, 2024, and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.